|   |   |   |
|---|---|---|
| LAWRENCE JAGGON | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:18-CV-458 (JCH) |
|  | : |  |
| v. | : |  |
|  | : |  |
| COMMUNITY HEALTH SERVICES, INC. | : | SEPTEMBER 16, 2019 |
| Defendant. | : |  |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 60).**

## I.  INTRODUCTION

Plaintiff Lawrence Jaggon ("Jaggon") brought the present action against

defendant Community Health Services, Inc. ("CHS"), alleging discrimination in violation

of Title VII of the Civil Rights Act of 1964, negligent infliction of emotional distress, and

defamation.  See Amended Complaint (Am. Compl.) (Doc. No. 18).  This court

previously dismissed all claims except for the Title VII and defamation claims. See

Ruling (Doc. No. 21).

Pending before the court is CHS' Motion for Summary Judgment on the

remaining claims.  <u>See</u> Defendant's Motion for Summary Judgment (Doc. No. 60).  For

the reasons stated below, the Motion is granted.

## II.  STANDARD OF REVIEW

A motion for summary judgment will be granted if the record shows no genuine

issue as to any material fact, and the movant is "entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing the

absence of a genuine dispute of material fact.  <u>Celotex Corp. v. Cartrett</u>, 477 U.S. 317,

323 (1986).  The non-moving party may defeat the motion by producing sufficient

specific facts to establish that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the moving party satisfies that burden, the nonmoving party must set forth specific facts demonstrating that there is a genuine issue for trial. A genuine issue exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor. See, e.g., Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson, 477 U.S. at 252).

The court's role at summary judgment "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." O'Hara v. Nat. Union Fire Ins. Co. of Pittsburgh, 642 F.3d 110, 116 (2d Cir. 2011). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996). Rather, a party opposing summary judgment "must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). The evidence offered in opposition to a motion for summary judgment must be both admissible and must be sufficient to raise a genuine issue of material fact. See LaSalle Bank National Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005); Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001).

III. **FACTS**[1]

A. <u>Background</u>

CHS is a health center located in Hartford, Connecticut. Defendant's Local Rule 56(a)(1) Statement of Facts ("Def. 56(a)(1)") ¶ 1; Plaintiff's Local Rule 56(a)(2) Statement of Facts in Opposition ("Pl. 56(a)(2)") ¶ 1. Jaggon worked as a Registered Nurse at CHS from August 2012 until October 2016. Def. 56(a)(1) ¶ 2. Jaggon is a black male born in Jamaica. <u>Id.</u> ¶ 3. Gregory Stanton is CHS' CEO; Stanton is a black male. <u>Id.</u> ¶ 4. Genea Bell is CHS' Chief Legal and Human Resources Officer; Bell is a black female. <u>Id.</u> ¶ 5. Mauricio Montezuma, M.D., was CHS' Medical Director. <u>Id.</u> ¶ 6. Montezuma is a "white male Latino" born in Colombia. Pl. 56(a)(2) ¶ 6. Anne Howley is

---

[1] The undisputed facts are taken from the Defendant's Local Rule 56(a)(1) Statement of Material Facts and Jaggon's Local Rule 56(a)(2) Statement of Facts in Opposition. Unless otherwise noted, Jaggon admits to the facts as stated. The court notes, however, that Jaggon failed to adhere to the requirements of the District of Connecticut Local Rules, which state that,

> [a] party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled "Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment," **which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56 (a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact** as permitted by Federal Rule of Civil Procedure 56(c).

D. Conn. L. Civ. R. 56(a)(2) (emphasis added). Jaggon's Local Rule 56(a)(2) Statement of Facts in Opposition does not include a reproduction of the numbered paragraphs from CHS' Local Rule 56(a)(1) Statement. Moreover, Jaggon's 56(a)(2) Statement is not in compliance with the length limits stated in the Local Rules. The Local Rules state that the portion of the nonmoving party's 56(a)(2) Statement that is used to admit or deny to facts "shall be no longer than twice the length of the moving party's Local Rule 56(a)1 Statement, absent leave of the Court granted for good cause shown." <u>Id.</u> CHS's Local Rule 56(a)1 Statement is 18 pages long, while Jaggon's 56(a)(2) Statement is 46 pages long, despite the fact that it includes no reproduction of CHS' numbered paragraphs.

Jaggon's counsel is advised, in the future, to review and adhere to the Local Rules prior to filing documents in this court, as failure to do so may result in sanction, including the striking of noncompliant filings.

CHS' Nurse Manager for its Adult Medicine Department; Howley is a white female. Def. 56(a)(1) ¶ 7.

B. <u>Termination</u>

Jaggon first filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on October 14, 2016.[2] Def. 56(a)(1) ¶ 10. He filed a second charge of discrimination on December 20, 2016. <u>Id.</u> The CHRO dismissed Jaggon's claims and, on April 3, 2018, rejected Jaggon's request for reconsideration of those dismissals.[3] <u>Id.</u> at 12. Three hundred days before October 14, 2016, the first date of filing with the CHRO, was December 19, 2015. <u>Id.</u> ¶ 13.

On September 29, 2016, Jaggon had a phone conversation with a representative of a home care agency, Tina Antogiovanni ("Antogiovanni"). <u>Id.</u> ¶ 17; Pl. 56(a)(2) ¶ 19. During that conversation, Jaggon stated that he "had been a Director of Nursing." Def. 56(a)(1) ¶ 19; Pl. 56(a)(2) ¶¶ 19–20. Kim Tran and Kyle O'Donnell, two CHS employees, provided Howley with written statements about the incident. Def. 56(a)(1) ¶ 21; Pl. 56(a)(2) ¶ 21. Howley spoke to Antogiovanni on September 23, 2016.[4] Def. 56(a)(1) ¶ 23. Antogiovanni, Tran, and O'Donnell all submitted statements to Howley in which they stated that Jaggon had said he was "the" Director of Nursing during the phone call with Antogiovanni. <u>See</u> Def. 56(a)(1) ¶¶ 20–21, 25, 28. Jaggon denies that

---

[2] While Jaggon disputes that the first filing occurred on October 14, 2016, and argues instead that he first filed a charge with the CHRO on September 6, 2016, <u>see</u> Pl. 56(a)(2) at 10, Jaggon's "citation" to "DEPO. and Bells EXHIBIT," <u>see id.</u>, do not support such a claim. The fact is therefore deemed admitted.

[3] While Jaggon denies this statement (in part), <u>see</u> Pl. 56(a)(2) at 12, his denial is without citation to any evidence, and the fact is deemed admitted.

[4] While Jaggon denies this statement, <u>see</u> Pl. 56(a)(2) ¶ 23, his denial is limited to Antogiovanni's listed position, not as to whether any such conversation occurred on the stated date.

4

he said he was "the" Director of Nursing during his conversation with Antogiovanni, but does not deny that Antogiovanni, Tran, and O'Donnell reported to Howley that he had done so.[5] Pl. 56(a)(2) ¶¶ 21, 25. Dr. Montezuma and Bell spoke to Antogiovanni on October 3, 2016. Affidavit of Genea Bell ("Bell Aff.") (Doc. No. 63-5) ¶ 5. Antogiovanni again reported that Jaggon had identified himself as "the Director of Nursing." Id. Dr. Montezuma placed Jaggon on administrative leave on October 4, 2016. Pl. 56(a)(2) ¶ 33.

Bell met with Jaggon and his union representative on October 13, 2016. Id. ¶ 34. During that meeting, Jaggon stated that when he told Antogiovanni that he was "a" Director of Nursing, he meant only that he had previously held that title before working at CHS. Def. 56(a)(1) ¶ 36; Pl. 56(a)(2) ¶ 36. During a conversation between Bell and Antogiovanni on October 19, Antogiovanni told Bell that Jaggon had "absolutely not" explained that he had previously been "a" Director of Nursing, and that she was under the impression that Jaggon was the Director of Nursing for CHS.[6] Def. 56(a)(1) ¶¶ 38–39; Bell Aff. ¶ 8; Pl. 56(a)(2) ¶¶ 38–39. Jaggon's employment was terminated on October 21, 2016. See Termination Letter (Doc. No. 63-5) at 65.

C.    Defamation

On February 26, 2016, Stanton (the CEO of CHS) held a staff meeting in the lobby of CHS. Pl. 56(a)(2) ¶ 48. At the staff meeting, Stanton called Jaggon to the front

---

[5] Jaggon argues that Howley's Affidavit is an "unsworn hearsay statement." Pl. 56(a)(2) ¶ 25. While the signature line of the Affidavit is blank, the first page includes a signature reading "Anne Howley," as well as the dated stamp of a Notary Public. See Affidavit of Anne Howley ("Howley Aff.") (Doc. No. 63-7) at 2.

[6] Jaggon denies these statements without citation to any evidence. They are deemed admitted. Moreover, contrary to Jaggon's claim, see Pl. 56(a)(2) ¶¶ 38–39, Bell's Affidavit is a signed and sworn statement. See Bell Aff. (Doc. No. 63-5) at 6.

of the room, and made a comment to the effect that employees "should be careful with whom they associate." Deposition of Lawrence Jaggon ("Jaggon Depo.") (Doc. No. 63-1) at 35.

### D. Other Discriminatory Actions

In addition to his termination, Jaggon claims that CHS discriminated against him in other ways on the basis of his race, color, national origin, and sex, all in violation of Title VII of the Civil Rights Act of 1964.[7] Def. 56(a)(1) ¶ 51; Pl. 56(a)(2) ¶ 51.

## IV. DISCUSSION

### A. Motion for Summary Judgment as to Jaggon's Title VII Claims (Count One)

CHS first argues that it is entitled to summary judgment as to Jaggon's Title VII claims. See Defendant's Memorandum in Support of its Motion for Summary Judgment ("Def.'s Mem. in Supp.") (Doc. No. 61) at 14. CHS argues that (1) allegations that predated December 19, 2015, are time barred, see id. at 14–16, and (2) that Jaggon's timely allegations do not meet the Title VII standard set in McDonnell Douglas, id. at 16. Before addressing the merits of any claims, the court addresses whether any of the alleged discriminatory or retaliatory acts are time-barred.

---

[7] While he admits this statement, Jaggon's response spans 13 pages. See Pl. 56(a)(2) 14–27. To the extent that Jaggon's counsel sought to introduce additional facts establishing a material issue of fact, the appropriate means to do so was through a separate section in his 56(a)(2) statement, entitled Additional Material Facts, which would include, in "separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 any additional facts, not previously set forth in responding to the movant's Local Rule 56(a)1 Statement, that the party opposing summary judgment contends establish genuine issues of material fact precluding judgment in favor of the moving party." D. Conn. L. Civ. R. 56(a)(2)(ii).

Jaggon's counsel is advised, in the future, to familiarize himself with the Local Rules of this court, and that failure to abide by such rules to the degree demonstrated in the Local Rule 56(a)(2) Statement submitted in this case will result in sanction.

A party seeking to file discrimination claims under Title VII must ordinarily file such claims with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the date on which the "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). "However, if the alleged discrimination took place in a state or locality that has its own antidiscrimination laws and an agency to enforce those laws, then the time period for 'fil[ing]' claims with the EEOC is extended to 300 days." Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996) (citing 42 U.S.C. § 2000e–5(e)(1)). Connecticut is a state with its own employment practices agency, the Commission on Human Rights and Opportunities ("CHRO"). Therefore, the 300-day period applies. Jaggon first filed a charge of discrimination with the CHRO on October 14, 2016. Def. 56(a)(1) ¶ 10. Three hundred days prior to that date was December 19, 2015.

Jaggon contends that the "continuing violation" exception applies and that the allegedly discriminatory acts that occurred before December 19, 2015, therefore remain actionable. Under the continuing violation exception to the Title VII limitations period, "[if] a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 155–56 (2d Cir. 2012). However, the continuing violation exception does not apply to discriminatory acts that are merely similar or related. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Instead, the exception applies to "cases involving specific discriminatory policies or mechanisms," Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d

Cir. 1993), and to claims involving hostile work environment, Morgan, 536 U.S. at 115. In hostile work environment claims, the Second Circuit instructs courts to examine "the totality of the circumstances" including behavior outside the 300-day period. McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 79 (2d. Cir. 2010).

Jaggon supports his claim of discrimination with several events that occurred before December 19, 2015 – the date at which the 300-day window closed. Jaggon alleges that: (1) he was bypassed for two positions in 2013, Jaggon Depo. at 205, (2) he was bypassed for a position in 2014, id. at 21, (3) a co-worker called him a "rat" in 2014, id. at 72, (4) his supervisors demoted him in June 2015, id. at 93, and (5) his supervisor disciplined him in September 2015, id. at 198. The statute of limitations has run on these discrete acts of alleged discrimination; however, the court considers them for the narrow purpose of determining whether the conduct was so pervasive as to make the work environment hostile. See, infra § IV(A)(3).

1.     Discrimination

Jaggon complains that CHS discriminated against him on the basis of his race, color, national origin, and sex in violation of Title VII. Am. Compl. ¶ 131. Specifically, Jaggon complains that CHS discriminated against him by (1) failing to promote him to two positions to which he applied, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgement ("Pl.'s Mem. in Opp.") (Doc. No. 68) at 3–5, (2) demoting him from several committee assignments, id. at 20, (3) refusing to allow his schedule change request, id. at 18, and (4) terminating his employment, id. at 26.

In evaluating claims of employment discrimination, courts apply a three-step burden shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

At step one, a plaintiff must initially establish a prima facie case of discrimination. The burden then shifts to the defendant to put forward a legitimate, nondiscriminatory reason for the adverse action. If the defendant makes such a showing, "the burden shifts back to the plaintiff to prove discrimination, for example, by showing that the employer's proffered reason is pretextual." Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006).

CHS argues that summary judgment is appropriate because (1) CHS failed to meet its initial burden of putting forward a prima facie case of discrimination, and (2) assuming, arguendo, that Jaggon established a prima facie case of discrimination, he failed to demonstrate that a genuine dispute of material fact exists as to whether CHS' reasons for any adverse employment action were a pretext for discrimination. See Def.'s Mem. in Supp. at 21, 23–25.

### a. Jaggon's Prima Facie Case

A plaintiff establishes a prima facie case of discrimination by "showing that: (1) he belonged to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Roncallo v. Sikorsky Aircraft, 447 F. App'x 243, 245 (2d Cir. 2011). CHS concedes that Jaggon, an African American male born in Jamaica, is a member of a protected class. Def.'s Mem. in Supp. at 18. However, CHS argues that each of Jaggon's discrimination claims fails to satisfy at least one prong of the prima facie case.

i. Qualified for the position. Jaggon alleges that CHS discriminated against him by failing to promote him to Manager of Patient Care Systems. Jaggon Depo. at 194.

He further testified that CHS never acknowledged his application and failed to grant him an interview.  Id. at 107.

Jaggon has failed to make out a prima facie case based on this claim.  In her Affidavit, Genea Bell, CHS's Chief Legal and Human Resources Officer, stated—and Jaggon did not deny—that the Manager of Patient Care Systems position required a bachelor's degree.  Bell Aff. at 5 ¶ 13.  Because Jaggon does not have a bachelor's degree, Jaggon Depo. at 117, Jaggon cannot establish one of the elements of the prima facie case – qualification for the position.  See Harvin v. Manhattan and Bronx Surface Transit Operating Auth., 767 Fed. App'x 123, 127 ("Harvin sought to be promoted into positions for which she was not qualified because those positions required a bachelor's degree.") (summary order).

ii.  Adverse employment action.  An employee sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment that is "more disruptive than a mere inconvenience or an alteration of job responsibilities."  Crady v. Liberty Nat'l Bank and Trust Co. of Ind., 993 F.2d 132, 136 (2d Cir. 1993).  Examples of materially adverse employment actions include "termination, demotion evidenced by a decrease in salary or wage, a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  Kessler v. Westchester Cty. Dep't. of Soc. Servs., 461 F.3d 199 (2006) (internal quotations and citations omitted).  Ultimately, "whether an undesirable employment action qualifies as being adverse is a heavily fact-specific, contextual determination."  Hoyt v. Andreucci, 433 F.3d 320, 328 (2d Cir. 2006) (internal quotation marks and citations omitted).

Jaggon complains that he sustained an adverse employment action when CHS failed to allow his schedule change request. In May 2016, he made three requests to modify his work hours so that he could assist his daughter with preparing for school each morning. Jaggon Depo. at 151–152. Jaggon proposed to arrive 30 minutes later than his scheduled start time; he would recover the lost time by staying late 30 minutes each day. Id. at 154. Jaggon complains that these requests were denied, despite the fact that a white employee was allowed to arrive late to work each day. Id. at 151.

No reasonable jury could find that the denial of Jaggon's schedule change request constitutes an adverse employment action. Courts in this Circuit have generally held that "receiving unfavorable schedules . . . do[es] not rise to the level of [an] adverse employment action." Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005); see also Rodriquez-Cross v. Sessions, No. 3:16-CV-00633 VLB, 2018 WL 3213290, at *7 (D. Conn. June 29, 2018). Nor does an employee sustain an adverse employment action when his employer denies the employee's schedule change requests. See Gutierrez v. City of New York, 756 F. Supp. 2d 491, 508–09 (S.D.N.Y. 2010) (finding that the employer's refusal to grant days off did not constitute an adverse employment action); Kaur v. New York City Health & Hosps. Corp., 688 F. Supp. 2d 317, 332 (S.D.N.Y. 2010) ("[D]enial of vacation time and alteration of Plaintiff's lunch schedule, taken alone, do not rise to the level of an adverse employment action.").

Jaggon's complaint that CHS allowed a co-worker to report to work each day does not alter the court's analysis. Dr. Mauricio Montezuma testified–and Jaggon did not deny–that the coworker had reduced her hours to a part-time basis in order to pursue additional schooling. Deposition of Mauricio Montezuma ("Montezuma Depo.")

(Doc. No. 63-2) at 61.  A part time employee is not an appropriate comparator when considering claims of disparate impact based on schedule flexibility.  See Ruiz v. County of Rockland, 609 F.3d 486, 493 (2d Cir. 2010) ("[T]he comparator must be similarly situated to the plaintiff in all material respects.") (internal quotations omitted).  CHS' denial of his schedule change request does not constitute an adverse employment action.

Second, Jaggon complains he sustained an adverse employment action when CHS removed him from the Quality Control Committee and Triage Committee.  Pl.'s Mem. in Opp. at 21.  CHS argues that neither committee removal constitutes an adverse employment action because neither resulted in changes to Jaggon's pay or in decreased opportunities for advancement.  Def.'s Mem. in Supp. at 24.  CHS further notes that a mere alteration of job responsibilities does not constitute an adverse employment action.  Id. (citing Kessler, 461 F.3d at 204).  The court agrees.  Jaggon presented no evidence upon which a reasonable jury could find that his removal from the committees constituted a "materially adverse change."  Shultz, 867 F.3d at 304.  Therefore, Jaggon did not sustain an adverse employment action when CHS removed him from the Quality Control and Triage Committees.

Third, Jaggon complains that he sustained an adverse employment action when CHS "subjected him to repeated discipline" and "threats of discipline."  Pl.'s Mem. in Supp. at 6.  Jaggon alleges that CHS "disciplined [him] on two bogus charges based on a sexual harassment charge . . . and his failure to complete home care orders."  Id. at 5.  He testified that CHS eventually dropped the first charge, but that it nonetheless excluded him from the interview process of the Manager of Patient Care Systems

position.  As to the latter instance of discipline, Jaggon disputes that he failed to complete the order.  Id. at 18.

In the Second Circuit, discipline, standing alone, is insufficient to constitute an adverse employment action where a plaintiff alleges no meaningful effects or ramifications of that discipline action.  See Weeks v. New York State (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001) ("Weeks, however, alleges no facts from which one could infer that the notice of discipline created a materially adverse change in her working conditions.  She does not describe its effect or ramifications, how or why the effect would be serious, whether it went into any file, or even whether it was in writing.") (internal quotations omitted).  Jaggon contends that the sexual assault charge excluded him from the interview process of the Manager of Patient Care Systems position.  Pl.'s Mem. in Opp. at 5.  This claim is belied by the undisputed fact that the position required a bachelor's degree – a qualification that Jaggon did not possess.  Jaggon's claim related to the second instance of discipline similarly fails.  Montezuma's decision to discipline Jaggon for his perceived failure to complete the home care order does not constitute an adverse employment action.  See Parsons v. JPMorgan Chase Bank, No. 16-CV-0408 NGG, 2018 WL 4861379, at *7 (E.D.N.Y. Sept. 30, 2018).  ("Mumcuoglu's order to discipline the African-American employees does not constitute an adverse employment action because it is a part of the normal job functions of a Chase Branch Manager to manage the daily operation of the branch and to ensure compliance with Chase's policies and procedures.").  Even more, Jaggon fails to identify any consequence of the written warning he was issued.  Therefore, these instances of discipline do not constitute adverse employment actions.

Fourth, Jaggon complains that he sustained an adverse employment action when CHS failed to promote him to the Patient Care Coordinator position in June 2016. Jaggon contends that Dr. Montezuma informed Jaggon on June 21 that the position was still available but that CHS intended to fill the position by July. Pl.'s Mem. in Opp. at 31. Jaggon applied for the position on June 22. Jaggon Depo. at 249. CHS offered the position to another employee that same day. CHS contends that the decision to promote another candidate occurred before Jaggon had applied to the position. Def.'s Mem. in Supp. at 23. CHS therefore contends that Jaggon's claim fails because "not interviewing a candidate for a position for which an offer has been made is not an adverse employment." Id.

A decision to exclude an employee from an interview is an adverse employment action. See Davidson v. Lagrange Fire Dist., No. 08-CV-3036 VB, 2012 WL 2866248 at *14, (S.D.N.Y. June 19, 2012) (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999), abrogated on other grounds by Lore v. City of Syracuse, 670 F.3d 127 (2d Cir. 2012)). Because Jaggon has created a question of fact as to whether the position was still available at the time he applied, a reasonable jury could conclude that CHS denied Jaggon the opportunity to interview for an available position. Therefore, Jaggon's claim of discrimination relating to CHS' failure to promote him to the position of Patient Care Coordinator satisfies the second prong of a prima facie case of discrimination.

Fifth, Jaggon complains that he sustained an adverse employment action when CHS terminated his employment on October 21, 2016. Pl.'s Mem. in Opp. at 26.

Therefore, Jaggon's allegations, if true, would show that he experienced two adverse employment actions: CHS' failure to promote him to the position of Patient Care Coordinator and termination.

iii.  <u>Inference of discriminatory intent</u>. In the final prong of a prima face case, the plaintiff must present evidence that "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003).  Because a plaintiff's burden of establishing a prima facie case is minimal, <u>James v. N.Y. Racing Ass'n</u>, 233 F.3d 149, 153–54 (2d Cir.2000), Jaggon presented sufficient evidence upon which a reasonable jury could find an inference of discriminatory intent.  As to Jaggon's failure to promote claim, CHS ultimately hired Shavon Russell, a female African American.  Pl.'s Mem. in Opp. at 5.  Russell is not of Jamaican descent.  Jaggon Depo. at 249.   Howley, Jaggon's supervisor, was in involved in that hiring process.  Howley Aff. ¶ 5.  Jaggon testified that Howley had previously told him that she did not like working with Jamaicans.  Jaggon Depo. at 67.  If a jury were to accept this as true, a reasonable jury could also find that Howley's prejudice impacted the advancement opportunities of Jaggon.  As to Jaggon's wrongful termination claim, Jaggon alleges that a white coworker retained her job despite being issued "fourteen (14) discplines."  Pl.'s Mem. in Opp. at 10.  He further claims he was terminated following his "first and only offense."  <u>Id.</u> at 11.  Howley was also involved in the events surrounding Jaggon's termination.  Howley Aff. ¶ 3.  These facts, when viewed in the light most favorable to Jaggon, could support a reasonable inference of discrimination on the basis of national origin and race.  <u>Littlejohn v. City of New York</u>, 795 F.2d 297, 312 (2d Cir. 2015) ("An inference of discrimination can arise

from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'") (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir.2009)).

b.    CHS' Burden of Production

The second step under McDonnell Douglas requires the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  The defendant's burden at this stage is one of production, not persuasion; "it can involve no credibility assessment."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993); see also Cooper v. Conn. Pub. Defs. Office, 280 Fed. App'x. 24, 25 (2d Cir. 2008) ("We note that the defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.").

CHS has proffered legitimate, nondiscriminatory reasons for both its failure to promote Jaggon and its decision to terminate his employment.  As to Jaggon's failure to promote claim, CHS argues that it had decided to offer another employee the position before Jaggon had applied.  Def.'s Mem. in Supp. at 23.  As to Jaggon's termination claim, CHS contends that it terminated Jaggon's employment after an investigation concluded that Jaggon had identified himself as "the Director of Nursing" in a telephone conversation with Tina Antogivanni, a representative of a home care agency that worked with a CHS patient.  At least one employee testified to hearing the alleged misrepresentation.  See Deposition of Kim Tran (Doc. No. 63-4) at 15.  CHS also points

to the Affidavits of Howley and Bell, and the deposition of Dr. Montezuma – each of which restates their conclusion, following investigation, that Jaggon had misrepresented himself as the Director of Nursing. See Howley Aff. ¶ 3, Bell Aff. ¶ 9, Montezuma Depo. at 36–38. The reasons that CHS proffered relating to its decisions not to promote Jaggon and to ultimately terminate his employment are both sufficient to rebut Jaggon's prima facie case of discrimination.

c. Evidence of Pretext

Under the McDonnell Douglas burden-shifting framework, once the defendant articulates a legitimate, non-discriminatory reason for its treatment of the plaintiff, the burden shifts back to the plaintiff, who must present "evidence that reasonably supports a finding of prohibited discrimination, i.e., that the Defendants' proffered non-discriminatory reasons are merely pretext for wrongful discrimination." Wilks v. Elizabeth Arden, Inc., 507 F. Supp. 2d 179, 194 (D. Conn. 2007) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

Jaggon has failed to satisfy his burden of presenting evidence upon which a reasonable jury could find that the reasons CHS proffered for the adverse employment actions he sustained were a pretext for discrimination. As to Jaggon's failure to promote claim, Jaggon never claims that CHS' stated reasons (that CHS had already selected an applicant) was a pretext for discrimination. In fact, Jaggon never directly refutes CHS' position on this issue.

Jaggon similarly fails to provide evidence upon which a reasonable jury could find that discrimination was a motivating factor in his termination. CHS provided Affidavits and deposition testimony supporting its contention that "[Jaggon]

misrepresented his status within CHS to an outside health care provider." Def.'s Mem. in Supp. at 20. Jaggon denies telling Antogiovanni that he was Director of Nursing. Instead, he claims to have told her that "he had been a nursing Director." Jaggon Mem. in Opp. at 28. But to survive summary judgement, Jaggon cannot merely show that a question of fact exists as to the contents of the conversation; instead, he must present evidence upon which a reasonable jury could find that CHS terminated Jaggon on the basis of his race, national origin, or sex. On this issue, Jaggon has failed to meet his burden. Jaggon provides little more than conclusory allegations and mere assertions. For example, he contends that he was "terminated by CHS on the basis of his race, national, origin, [and] gender," Pl.'s Mem. at 26, and that his termination was the culmination of "a concerted campaign to discriminate against him . . ." Id. at 6. However, these conclusory allegations are insufficient to defeat a well-founded motion for summary judgment. See Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

The evidence that Jaggon does present is insufficient for a reasonable jury to find that discrimination was a motivating factor in his termination. He identified one statement from Howley, a supervisor and Nurse Manager, in which she told him that she did not like working with Jamaicans. Jaggon Depo. at 67. CHS contends that the decision to terminate was made by Dr. Montezuma and Bell and that Jaggon has never attributed any discriminatory statement to either of these supervisors. Def.'s Mem. in Supp. at 21. Even if Howley was involved in the decision to terminate Jaggon's employment, this one instance of a "stray remark" would be insufficient to establish a

case of discrimination.  See Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir.1998)

("[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient

evidence to make out a case of employment discrimination.").

It is similarly insufficient for Jaggon to create a question of fact on the issue of

pretext alone.  The majority of Jaggon's Memorandum in Opposition argues that the

termination of his employment was in response to Jaggon's complaints concerning

various regulatory and healthcare-related issues at CHS.  But showing pretext (without

discrimination) is insufficient.  In the Second Circuit, "a Title VII plaintiff may not prevail

by establishing only pretext, but must prove, in addition, that a motivating reason was

discrimination."  Fields v. New York State Office of Mental Retardation and

Developmental Disabilities, 115 F.3d 116, 121 (2d Cir.1997); see also Vega v.

Hempstead Union Free Sch. Dist, 801 F.3d 72, 85 (2d Cir. 2015) ("[I]n an employment

discrimination case, a plaintiff must plausibly allege that . . . his race, color, religion, sex,

or national origin was a motivating factor in the employment decision.").  Because

Jaggon has failed to meet this burden, his claims of discrimination fail.  Summary

judgement is therefore granted as to Count One insofar as it involves claims of

discrimination.

2.    Retaliation

CHS next argues that Jaggon has failed to establish that he suffered an adverse

employment action in retaliation for a protected activity under Title VII.  The court

agrees.

Title VII prohibits an employer from discriminating against an employee because

the employee has opposed an employment practice prohibited by Title VII.  42 U.S.C. §

2000e-3(a).  Title VII retaliation claims are also "analyzed under the McDonnell Douglas burden-shifting test."  Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010); see supra § IV(A)(1).  "To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action."  Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2d. Cir. 1998).  The causal connection requires that the protected activity be the "but for" cause of the alleged adverse employment action.  Univ. of Tex. Southwestern Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2534 (2013).  CHS argues that Jaggon cannot make out a prima facie case for his retaliation claim because he cannot show that his termination was in retaliation to Jaggon's complaints of discriminatory employment practices.  Def.'s Mem. in Supp. at 19–20.  The court agrees.

Jaggon's retaliation claim satisfies the first three prongs of a prima facie case. Jaggon presented evidence demonstrating that he engaged in protected activity by complaining of discriminatory employment practices at CHS.  On April 26, 2016, Jaggon sent an email to CHS' Department of Human Resources "detailing the twenty instances of his rights being violated by CHS."  Pl.'s Mem. in Opp. at 6.  Furthermore, Jaggon filed a charge with the CHRO on October 14, 2016.  Def.'s 56(a)(1) ¶ 10.  Although these complaints contain only conclusory allegations, they nonetheless demonstrate that Jaggon "was engaged in protected activity by opposing a practice made unlawful by Title VII."  Galdieri-Ambrosini, 136 F.3d at 292.  CHS was aware of this protected

activity, see Bell Aff. ¶ 4, and Jaggon's employment was subsequently terminated.
Jaggon has therefore established the first three prongs of his prima facie case of
retaliation.

However, Jaggon has failed to present evidence upon which a reasonable jury
could find that there was a causal connection between the protected activity and
Jaggon's termination. In the second charge he filed with the CHRO, Jaggon alleged "I
was terminated because I filed a CHRO complaint (#1710166) on 10/14/16 against the
respondent." Affidavit of Discriminatory Practice (Doc. No. 63-5) at 16. But as the
CHRO noted in dismissing the charge, see Finding of No Reasonable Cause (Doc. No.
63-5) at 23, Dr. Montezuma placed Jaggon on administrative leave on October 4, 2016
– 10 days before Jaggon filed his first charge with the CHRO. Bell Aff. ¶ 6. In his
Memorandum in Opposition, Jaggon does not argue that a causal connection exists
between his charges with the CHRO and his termination. Instead, Jaggon argues that
his termination was in retaliation for the complaints he made concerning various
regulatory and health-related issues at CHS. Pl.'s Mem. in Opp. at 26 ("The
Defendant's motive is laid bare by the fact that Dr. Montezuma revealed that 'Since
2013, Mr. Jaggon was deemed . . . to be one of the persons who routinely made
anonymous complaints to the [Department of Public Health].'"); see also id. at 33
(describing Jaggon's complaints as "the motive underlying Defendant targeting the
Plaintiff for retaliation, discrimination, [and] harassment . . ."); id. at 6 ("CHS attributed its
violative DPH related woes to the anonymous complaints its agents believed were filed
by the Plaintiff and embarked on a concerted campaign to discriminate against him.").
Jaggon's claims regarding this ulterior motive may have merit, but it is unrelated to any

employment practice made unlawful by Title VII.  See, 42 U.S.C. § 2000e-3(a)

(prohibiting discrimination against an employee "because he has opposed any practice

made an unlawful employment practice by this subchapter, or because he has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing under this subchapter.") (emphasis added).

Because Jaggon does not present evidence upon which a reasonable jury could

find that his protected activity was the but-for cause of his termination, he has failed to

establish a prima facie case of retaliation.  Summary judgement is therefore granted as

to Count One insofar as it involves claims of retaliation.

### 3.    Hostile Work Environment

In Count One of his Amended Complaint, Jaggon also complains of a "racially

hostile work environment."  Am. Compl. ¶ 131.  CHS responds that Jaggon "alleges

nothing that could rise to the level of a hostile work environment."  Reply Memorandum

in Support of Defendant's Motion for Summary Judgement (Doc. No. 72) at 5.

To establish a hostile work environment claim under Title VII, a plaintiff must

show that the "workplace is permeated with discriminatory intimidation, ridicule, and

insult that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment."  Harris v. Forklift Sys., Inc.,

510 U.S. 17, 21 (1993) (internal quotations omitted); see also Raspardo v. Carlone, 770

F.3d 97, 114 (2d Cir. 2014).  The plaintiff must show that the workplace is both

objectively "severe or pervasive enough that a reasonable person would find it hostile or

abusive, and the victim must subjectively perceive the work environment to be abusive."

Harris, 510 U.S. at 21.  Courts "assess the totality of the circumstances, considering

elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Raspardo, 770 F.3d at 114 (quoting Harris, 510 U.S. at 23).

Jaggon has failed to present evidence upon which a reasonable jury could find that his workplace was "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21. He relies largely on conclusory allegations and fails to present admissible evidence that is sufficient to raise a genuine issue of material fact. For example, he testified that "Howley told [a coworker] to file a harassment complaint against me." Jaggon Depo. at 204. Howley's statement could be admissible as a party opponent statement if a participant of the conversation testified as to the contents of Howley's instruction. See Fed. R. Evid. 801(d)(2). However, Jaggon does not allege that he heard this conversation or describe how he learned of it. Nor does he provide any evidence or testimony from anyone who heard Howley's instruction. Therefore, the statement is inadmissible hearsay and cannot support Jaggon's opposition to CHS' Motion for Summary Judgment. See LaSalle Bank National Ass'n, 424 F.3d at 205 ("The evidence considered on summary judgment must generally be admissible evidence.").

Jaggon also testified that he experienced a hostile work environment in that CHS assigned him a heavy workload. He testified that Howley, his supervisor, "was loading me down with work. She was looking over my shoulders. She was doing something different from – from all my previous supervisors." Jaggon Depo. at 201. Dr.

Montezuma denies that CHS intentionally assigned Jaggon more work than his peers. Montezuma Depo. at 60.

Even if a jury were to believe Jaggon's testimony, his allegation of a heavy workload cannot a sustain a claim for hostile workplace environment. The plaintiff asserting a hostile workplace "must . . . show 'either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment.'" Singa v. Corizon Health, Inc., 17-CV-4482 (BMC), 2018 WL 324884, *2 (E.D.N.Y. Jan. 8, 2018) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000), superseded on other grounds by N.Y.C. Local L. No. 85). Jaggon provides no testimony or admissible evidence suggesting that the workload he was assigned was extraordinarily severe. Nor does he testify as to the duration of the heavy workload he was allegedly assigned. In sum, Jaggon provides no admissible evidence demonstrating that his workload created a workplace environment objectively severe enough "that a reasonable person would find it hostile or abusive." Harris, 510 U.S. at 21. Even more, Jaggon provides no evidence to demonstrate that CHS targeted him with a heavy workload because of his protected status. See, e.g., Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile work environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."); Olorde v. Streamingedge, Inc., No. 11-CV-6934 (GBD)(AJP), 2014 WL 1689039, at *14 (S.D.N.Y. Apr. 29, 2014) ("[Plaintiff] may have a

legitimate complaint that he was overworked and required to perform personal tasks for [his boss], but there is no evidence that this was a form of discrimination.").

The other examples of hostile workplace environment that Jaggon alleges are unsupported by admissible evidence. For example, Jaggon argues that he sent Human Resources emails detailing the "numerous instances of retaliation and discrimination" which "detailed being treated differently . . ., subjected to repeated discipline . . . and a hostile work environment." Pl.'s Mem. in Opp. at 6. However, these emails contain only speculation and unsupported allegations. See Exhibit 14 (Doc. No. 68-14); Exhibit 15 (Doc. No. 68-15). He alleges that he was "robbed of my PTO." id., "disciplined for asking for help," id., and that his computer was tampered with, see Exhibit 21 (Doc. No. 68-21) and Exhibit 22 (Doc. No. 68-22). However, these allegations are unsupported by admissible evidence. Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

The evidence that Jaggon presents relating directly to racial animus is similarly insufficient. Jaggon testified to only two comments from CHS managers that he perceived as racial. Jaggon Depo. at 66–70. First, he testified that Ms. Howley "told me she didn't like to work with Jamaicans because she worked with a Jamaican lady whom she could not understand." Id. at 67. Second, Mr. Jaggon testified that Judy Tallman, CHS's Director of Grants and Outreach, twice referred to him as "a rat." Id. at 69–70. However, these stray comments are not sufficient evidence upon which a reasonable jury could find that Jaggon suffered a work environment permeated with

discriminatory intimidation.  Therefore, CHS' Motion for Summary Judgement is granted

as to Count One, insofar as it relates to Jaggon's claims of a hostile work environment.

B.     Motion for Summary Judgment as to Jaggon's Defamation Claim (Count Three)

In Count Three of his Amended Complaint, Jaggon alleges that CHS is liable for

defamation because its agents published "slanderous material" about Jaggon,

specifically that he was a "problem employee and that his coworkers should not

associate with him."  Am. Compl. ¶ 138.  In his Memorandum of Opposition and in his

deposition testimony, Jaggon clarifies that the allegedly slanderous statement was

made by the CEO of CHS, Greg Stanton, on February 26, 2016.  See Pl.'s Mem. in

Opp. at 36 ("The Plaintiff was defamed by way of slander by Mr. Stanton on February

26, 2016 . . ."); see also, Jaggon Depo. at 53, 54, 73–74, 75, 108, 196.

CHS argues that the allegedly defamatory statements occurred outside the

limitations period for defamation claims.  Def.'s Mem. in Supp. at 27.  The court agrees.

Under Connecticut General Statutes section 52-597, "[n]o action for libel or slander shall

be brought but within two years from the date of the act complained of."  Jaggon filed

his complaint on March 19, 2018.  Complaint (Doc. No. 1) at 1.  Because the allegedly

defamatory statement was published more than two years before Jaggon's Complaint

(filed on March 19, 2018), this action is barred by the statute of limitations.  Cwelinsky v.

Mobil Chemical Co., 267 Conn. 210, 224 (2004) ("The statute of limitations for a

defamation claim begins on the date of publication.").

In his Memorandum in Opposition, Jaggon asserts (for the first time) new claims

of defamation based on two instances in which CHS employees called Jaggon a

"trouble maker."  Pl.'s Mem. in Opp. at 37.  These allegations do not appear in Jaggon's

amended complaint, nor did Jaggon raise them when CHS's counsel exhaustively deposed Jaggon to determine every basis he had for defamation. Jaggon Depo. at 55 – 64. Setting aside these procedural concerns, the court concludes that the allegations that a co-worker is a "trouble maker" are not defamatory. Instead, these statements are "pure expressions of opinion, which are unqualifiedly protected by the first amendment." Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 124 (1982). "An opinion . . . is a personal comment about another's conduct, qualifications or character that has some basis in fact." Id. at 111. The term "trouble maker" fits this category.

Jaggon has cited no case which supports his new claim of defamation. See Pl.'s Mem. in Opp. at 37. This court's conclusion is in line with the conclusion of other courts which have considered this issue. In McGrath v. TCF Bank Savings, FSB, 502 N.W.2d 801, 808 (Minn. 1993), the Minnesota Supreme Court found:

> The trial court properly determined that the phrase 'troublemaker' was not actionable under either constitutional or common law standard. The term "troublemaker" lacks precision and specificity. This phrase also fails to suggest verifiable false facts about McGrath. Finally, the ambiguity of the term "troublemaker" prevents any underlying facts from being inferred from this phrase. Accordingly, the phrase "troublemaker" is not actionable because it is constitutionally protected.

See also Rhea v. Dollar Tree Stores, Inc., 2005 WL 2600213 at *11 (W.D. Tenn. 2005) ("[C]alling someone a troublemaker is not defamatory."); Falk v. Anesthesia Associates of Jamaica, 644 N.Y.S.2d 237, 239 (N.Y. Sup. Ct., 1st Dept 1996) ("[T]he characterizations made of plaintiff that he was a 'troublemaker' or 'not a team player', constituted non-actionable opinion."); Einhorn v. LaChance, 823 S.W.2d 405, 412 (Tex. App. 1st Dist. 1992) ("[T]he references to appellants as incompetent, troublemakers, and liars are assertions of pure opinion . . . Therefore, as to each of these statements,

the absolute constitutional privilege applies.").  CHS' Motion for Summary Judgement as to Count Three is therefore granted.

## V.     CONCLUSION

For the foregoing reasons, CHS' Motion for Summary Judgment (Doc. No. 60) is

**GRANTED.**

**SO ORDERED.**

Dated this 16th day of September 2019 at New Haven, Connecticut.


\_\_/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge